[Cite as *State v. Park*, 2012-Ohio-4069.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. John W. Wise, J. |
| -vs | : | |
| | : | |
| KAREN A. PARK | : | Case No. 12-CA-25 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Municipal Court, Case No. 2011TRC6670


JUDGMENT:          Affirmed


DATE OF JUDGMENT:          September 4, 2012


APPEARANCES:

For Plaintiff-Appellee

J. MICHAEL KING
35 South Park Place
Suite 35
Newark, OH  43055

For Defendant-Appellant

CHRISTOPHER M. SHOOK
33 West Main Street
Newark, OH  43058

*Farmer, J.*

{¶1}   On January 26, 2011, the Ohio State Highway Patrol was conducting a sobriety checkpoint on State Route 16 in Licking County, Ohio.  Appellant, Karen Park, entered the designated checkpoint lane, but did not stop even though she was directed to do so by two troopers.  Appellant was eventually stopped and charged with operating a motor vehicle under the influence in violation of R.C. 4511.19, failure to reinstate driver's license in violation of R.C. 4510.21, and failure to comply with the order of a police officer in violation of R.C. 2921.331.

{¶2}   On July 25, 2011, appellant filed a motion to suppress, challenging the sobriety checkpoint and probable cause to stop.  A hearing was held on August 25, 2011.  By judgment entry filed August 31, 2011, the trial court denied the motion.

{¶3}   On September 28, 2011, appellant filed a motion to reconsider the ruling on the motion to suppress.  A hearing was held on January 6, 2012.  By judgment entry filed January 17, 2012, the trial court once again denied the motion to suppress.

{¶4}   On February 14, 2012, appellant pled no contest to the charges.  The trial court found appellant guilty as charged.  By judgment entry filed same date, the trial court sentenced appellant to one hundred eighty days in jail with one hundred seventy-seven days suspended.

{¶5}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶6}   "THE TRIAL COURT ERRED IN ITS DETERMINATION THAT LAW ENFORCEMENT IS PERMITTED TO ALTERNATE THE FREQUENCY OF TRAFFIC

STOPS AT A SOBRIETY CHECKPOINT BASED UPON THE ON-SCENE SUBJECTIVE DETERMINATION OF A SUPERVISORY OFFICER."

II

{¶7} "THE TRIAL COURT ERRED IN ITS DETERMINATION THAT THE OFFICERS HAD REASONABLE CAUSE TO STOP APPELLANT'S VEHICLE FOR FAILURE TO COMPLY WHEN THE SOBRIETY CHECKPOINT ITSELF WAS UNCONSTITUTIONALLY ADMINISTERED."

III

{¶8} "THE TRIAL COURT ERRED IN ITS GUILTY FINDING ON THE CHARGE OF FAILURE TO COMPLY."

I, II

{¶9} Appellant's first two assignments challenge the trial court's denial of his motion to suppress. Specifically, appellant claims during a field sobriety checkpoint, the troopers arbitrarily altered the pattern of stopping the vehicles, and the troopers lacked reasonable suspicion of criminal activity in stopping her. We disagree.

{¶10} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19; *State v. Klein* (1991), 73 Ohio App.3d 485; *State v. Guysinger* (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v.*

*Williams* (1993), 86 Ohio App.3d 37.  Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress.  When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93; *State v. Claytor* (1993), 85 Ohio App.3d 623; *Guysinger.*  As the United States Supreme Court held in *Ornelas v. U.S.* (1996), 116 S.Ct. 1657, 1663, "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶11} In its January 17, 2012 judgment entry denying appellant's motion to dismiss, the trial court relied on a case from this court, *State v. Hall,* Ashland App. No. 03-COA-064, 2004-Ohio-3302, ¶19:

{¶12} " ' "***Where there is no consent, probable cause, or *Terry*-type reasonable and articulable suspicion, a vehicle stop may be made only where there minimally exists (1) a checkpoint or roadblock location selected for its safety and visibility to oncoming motorists; (2) adequate advance warning signs, illuminated at night, timely informing approaching motorists of the nature of the impending intrusion; (3) uniformed officers and official vehicles in sufficient quantity and visibility to 'show***the police power of the community;' and (4) a predetermination by policy-making administrative officers of the roadblock location, time, and procedures to be employed, pursuant to carefully formulated standards and neutral criteria." ' *State v.*

*Goines* (1984), 16 Ohio App.3d 168, 170-171, 474 N.E.2d 1219, 1221-1222, quoting *State v. Hilleshiem* (Iowa 1980), 291 N.W.2d 314, 318."

{¶13} The trial court found the central issue was whether the checkpoint met the predetermined policymaking decisions as to roadblock location, time, and procedures:

{¶14} "The only prong of the *Goines* test at issue herein is the fourth, which involves a predetermined policy to be employed at the roadblock. The Court, based on Lt. Blosser's testimony and the inter-office memorandum, believes that he qualifies as a 'policy-making administrative officer' and that the criteria for changing the frequency of vehicles stopped–the changing traffic flow–is sufficiently neutral. Therefore, the Court finds that the sobriety checkpoint in question meets all four parts of the *Goines* test and did not violate the defendant's constitutional rights."

{¶15} During the first suppression hearing, defense counsel conceded the issue was either the validity of the checkpoint procedures or the propriety of the stop. August 25, 2011 T. at 4. Defense counsel stipulated that originally, only one out of three vehicles was stopped, but "based on the less frequency of the number of cars or the smaller number of cars that was passing through the check-point that initially it was three, then it was two, then it was one." Id. at 8. Appellant challenged the troopers' determination to change the pattern of the stops. Id. at 8-9.

{¶16} During the second suppression hearing, Lieutenant Darrin Blosser of the Ohio State Highway Patrol testified about the subject sobriety checkpoint. Lieutenant Blosser explained the checkpoint's location was based upon an analysis of the number of alcohol related crashes in specific areas and OVI arrests. January 6, 2012 T. at 6-7. The checkpoint was announced pursuant to Ohio State Highway Patrol procedures

(Plaintiff's Exhibit 1). Id. at 7-8. Based upon the high volume of traffic, the troopers stopped every third vehicle, but when the traffic decreased, they stopped every vehicle. Id. at 16-17. All the procedures outlined in Plaintiff's Exhibit 1 were followed. Id. at 15. The Ohio State Highway Patrol procedures do not dictate the frequency of vehicles to be stopped. Id. at 18.

{¶17} Lieutenant Blosser testified to the following:

{¶18} "Q. ***Okay and then does it reflect when you went down to, because of the traffic flow, stopping every vehicle?

{¶19} "A. Yes sir, I would just go through the chronically order here at 21 or I'm sorry at 22:15 hours, as I have mentioned, we were checking every other vehicle westbound. At 22:37 hours, we were checking every vehicle traveling westbound. At 22:50 hours, we were checking eastbound traffic, every vehicle, and the check-point closed at 00:40 hours, would have been on the 26th then.

{¶20} "***

{¶21} "Q. Why the switch um, there wasn't anything going on, on the eastbound lane for awhile and then there was a switch over or yeah it was all taking place in the westbound lane and then there's a switch over to the eastbound lane, uh, why did that occur?

{¶22} "A. Um, originally this was the first time we had conducted one in that location and I was, I guess mainly just concerned for the safety of the officers. I didn't know that we'd be able to handle both lanes of traffic coming though there um, making contacting with both side basically. Uh, once I got there and saw the set up and then as traffic thinned out and knowing that we had that turn lane there as kind of a buffer or

cushion between the two east and westbound lanes, I thought we would just go ahead and do the both, the both directions." Id. at 16 and 18, respectively.

{¶23} We concur with the trial court's analysis that the testimony of Lieutenant Blosser and Plaintiff's Exhibit 1 establish that all four prongs of *Goines/Hall* have been met.

{¶24} The trial court further found, apart from the sobriety checkpoint stop, that appellant's driving was sufficient to give rise to a *Terry* stop. In *Terry v. Ohio* (1968), 392 U.S. 1, 22, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to *Terry,* the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. *State v. Freeman* (1980), 64 Ohio St.2d 291, paragraph one of the syllabus.

{¶25} In its January 17, 2012 judgment entry, the trial court found the following:

{¶26} "Additionally, based on the testimony of troopers Moran and Eitel, the Court finds that the defendant failed to comply with the audible or visible order of a law enforcement officer. The Court specifically finds Tpr. Eitel holding his hand up in a 'stop' gesture while using his flashlight to direct the defendant to stop was an unambiguous visible and lawful order. Because the officers observed a traffic infraction,

they had more than reasonable, articulable suspicion to stop the defendant. Indeed, they possessed at that time probable cause to believe a crime had been committed and therefore were justified in making a non-investigatory stop of the defendant's vehicle."

{¶27} Trooper Daniel Moran testified appellant's vehicle went into the designated zone, passed two auxiliary officers, and just kept going (not slowing or stopping). January 6, 2012 T. at 30-31. Based upon these actions, Trooper Moran attempted to stop appellant's vehicle:

{¶28} "Q. Did you attempt to stop this car?

{¶29} "A. I did.

{¶30} "Q. How did you do that?

{¶31} "A. You know I'd stand our (sic) partially in the lane and, you know, I thought the person who was driving the car would have seen us standing there with the reflective vest. I started, you know, as it got closer you get to a little more of the panic when you realize that the vehicle isn't going to stop, thinking what's wrong and it blew by me and I yelled to the next troopers that was behind me, hey it's not stopping and then…

{¶32} Q. Do you know who was behind you?

{¶33} "A. Trooper Eitel was in the next, he was probably about a car or two length behind me. Uh.

{¶34} "Q: Did you yell anything to the driving of this vehicle?

{¶35} "A: I yelled stop and it did not.

{¶36} "Q: And this would have been in June of 2011, do you recall whether or not the window was up or down?

{¶37} "A: I do not recall, sir.

{¶38} "Q: And uh, you had flashlights, did you do anything with the flashlight in attempt to get the driver's attention?

{¶39} "A: Uh, the flashlight was pointed at vehicle. I don't think I actually pointed at the driver or anything of that sort to blind the driver, but uh, to get their attention.

{¶40} "Q: In your vest?

{¶41} "A: Correct.

{¶42} "Q: Uh, do you know whether the auxiliary that was working with you did anything?

{¶43} "A: Not that I'm aware of sir. I'm not sure.

{¶44} "Q: Once the vehicle passed you, did you have an opportunity to see the vehicle as it progressed down the street?

{¶45} "A: Trooper Eitel was in the second row or group of troops; he yelled again. I believe it got to the third row before uh, the vehicle was actually stopped and that was pretty much at the intersection of the Etna Parkway and State Route 16 and eventually pulled off to the right berm.

{¶46} "Q. Would that have meant it went through the entire uh, check-point area?

{¶47} "A. For the westbound side it was just about all the way through, at least three quarters of the way through.

{¶48} "Q. And how many different groups of trooper were out there between when it first entered and when it finally stopped?

{¶49} "A. There would of, the first group would have been two auxiliaries at the beginning of the zone. I was the first troops checking vehicles. There was Trooper Eitel and then the third wave, I not sure who was in the third wave, but that's eventually when the car stopped." Id. at 32-34.

{¶50} Trooper Sean Eitel first observed appellant approaching the checkpoint rather quickly. Id. at 42. Trooper Moran stepped out into the lane and used a flashlight in an attempt to slow the vehicle. Id. at 46-47. The vehicle did not stop, and Trooper Eitel attempted to stop the vehicle, gesturing and using a flashlight and yelling to stop. Id. at 47-49. The vehicle did not stop. Id. at 49.

{¶51} We find appellant's driving and her failure to obey the directives and commands of the troopers were sufficient articulable facts to warrant a stop.

{¶52} Upon review, we find the trial court did not err in denying the motion to suppress.

{¶53} Assignments of Error I and II are denied.

III

{¶54} Appellant claims her conviction for failure to comply was against the manifest weight of evidence. We disagree.

{¶55} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175. See also, *State v. Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new

trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶56} After pleading no contest, the trial court found appellant guilty of failure to comply in violation of R.C. 2921.331 which states:

{¶57} "(A) No person shall fail to comply with any lawful order or direction of any police officer invested with authority to direct, control, or regulate traffic.

{¶58} "(B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."

{¶59} Appellant pled no contest to the charge. During the plea hearing, appellant stipulated to the facts presented during the suppression hearings. February 14, 2012 T. at 2. Appellant argues the issue is whether the order to stop was lawful.

{¶60} As we found in Assignment of Error I, the facts established that the sobriety checkpoint was set-up pursuant to Ohio State Highway Patrol procedures (Plaintiff's Exhibit 1) and fulfilled the four requirements of *Goines/Hall.*

{¶61} In Assignment of Error II, we found appellant entered a well-lit and marked checkpoint with no less than five marked officers directing her to stop. She failed to slow or stop and proceeded through the checkpoint and was eventually stopped at or near the end of the lane.

{¶62} Upon review, we find sufficient facts were presented to establish a lawful order to stop, and find no manifest miscarriage of justice.

{¶63} Assignment of Error III is denied.

{¶64} The judgment of the Municipal Court of Licking County, Ohio is hereby affirmed.

By Farmer, J.

Delaney, P.J. and

Wise, J. concur.


s/ Sheila G. Farmer_____


s/ Patricia A. Delaney_____


s/ John W. Wise_____

JUDGES


SGF/sg 813

[Cite as *State v. Park*, 2012-Ohio-4069.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT


STATE OF OHIO                          :
                                   :
    Plaintiff-Appellee         :
                                   :
-vs-                                   :         JUDGMENT ENTRY
                                   :
KAREN A. PARK                          :
                                   :
    Defendant-Appellant        :         CASE NO. 12-CA-25


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court of Licking County, Ohio is affirmed. Costs to appellant.


s/ Sheila G. Farmer_____


s/ Patricia A. Delaney_____


s/ John W. Wise_____

JUDGES